UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

FERNANDO SANTIAGO HUERTA and
CLEMENTINA DURAN, and MELVIN RECAREY, on
behalf of themselves and all others similarly-situated,

**Civil Action No.: 23-0002
(OTW)**

Plaintiffs,

-against-

ANTILLANA & METRO SUPERMARKET, CORP.,
and ALRA CORP., and 639 GRAND ST. MEAT &
PRODUCE CORP., and OSVALDO RODRIGUEZ,
individually,

Defendants.

## SETTLEMENT AGREEMENT AND RELEASE

This Settlement Agreement and Release ("Agreement") is entered into by and between Plaintiffs, Fernando Santiago Huerta, Clementina Duran, and Melvin Recarey ("Named Plaintiffs"), on behalf of themselves and all other persons similarly situated who comprise the "Class" (as hereinafter defined, and, with the Named Plaintiffs, also referred to herein as "Plaintiffs") and Defendants, Antillana & Metro Supermarket, Corp. ("Antillana"), Alra Corp. ("Alra"), 639 Grand St. Meat & Produce Corp. ("Ozzies's"), and Osvaldo Rodriguez, individually (collectively as "Defendants," and together Plaintiffs as the "Parties").

## RECITALS AND BACKGROUND

A.      Plaintiffs Huerta and Duran filed a Class and Collective Action Complaint against Defendants Antillana, Alra, and Rodriguez, on January 1, 2023, in the United States District Court for the Southern District of New York, which was assigned docket number 23-CV-0002-RA-OTW (the "Action"). Plaintiffs alleged in their Amended Complaint that Defendants violated the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201 *et seq.*, and the New York Labor Law ("NYLL") Article 6, §§ 190 *et seq.*, and Article 19, §§ 650 *et seq.* On September 6, 2023, Named Plaintiffs filed an Amended Complaint, adding Plaintiff Recarey as a plaintiff and Ozzie's as a defendant.

B.      On December 29, 2023, the Defendants filed an Answer to the Amended Complaint, denying Named Plaintiffs' claims in their entirety.

C.      On July 15, 2024, Named Plaintiffs, along with eight Opt-in Plaintiffs that filed consent to join forms, moved for conditional certification of a collective action pursuant to 29 U.S.C. § 216(b). On November 1, 2024, the Court granted Named Plaintiffs' Motion.

1

D.    On February 6, 2025, the parties participated in private mediation, ultimately resolving on a Federal Rule of Civil Procedure ("Fed.R.Civ.P." or "Rule") 23 basis on behalf of a class comprised of all non-managerial employees that worked for Defendants for the applicable statutory period.

E.    Defendants, while continuing to deny any wrongdoing or liability, nevertheless have agreed to enter into this Agreement to avoid further expense, inconvenience, and the distraction of burdensome and protracted litigation, and to be completely free of any further controversy with respect to the claims that were asserted or could have been asserted in, or related in any way whatsoever to, the Action. Nothing in this agreement constitutes an admission of liability by Defendants with respect to any of the claims asserted in the Action.

F.    Plaintiffs' Counsel, having analyzed and evaluated the merits of the claims made against Defendants and the impact of this Agreement on Named Plaintiffs and Plaintiffs (collectively as the "Class"), and based upon their analysis and evaluation of a number of factors, and recognizing the substantial risks of continued litigation, including the possibility that the Action, if not settled now, might not result in any recovery whatsoever, or might result in a recovery that is less favorable and that would not occur for several years, is satisfied that the terms and conditions of this Agreement are fair, reasonable, and adequate and that this Agreement is in the best interests of the Class.

G.    Named Plaintiffs and Defendants, by and through their respective counsel, have engaged in extensive arms-length settlement discussions, and with the assistance of a mutually-retained mediator, Martin Scheinman, Esq., have reached a potential resolution of the Action. The Parties — subject to the approval of the Court — have elected to settle the Action pursuant to the terms set forth in this Agreement, which shall be submitted to the Court for approval through the mechanisms set forth below.

NOW THEREFORE, in consideration of the mutual covenants and promises set forth in this Agreement, as well as the good and valuable consideration provided for herein, the Parties agree to a full and complete settlement of the Action on the following terms and conditions:

1.    **DEFINITIONS**

The defined terms set forth in this Agreement have the meanings ascribed to them below.

**1.1**    **"Action" or "Litigation."** The Action or Litigation shall mean the lawsuit pending in the United States District Court for the Eastern District of New York, bearing the caption *Fernando Santiago Huerta et al., on behalf of themselves and all others similarly v. Antillana Metro & Supermarket Corp. et al.,* Case No. 23-cv-0002-RA-OTW.

**1.2**    **"Administrator" or "Claims Administrator."** The Administrator or Claims Administrator refers to Martom Solutions, LLC ("Martom"), a third-party administrator, to mail the Notices and administer the Settlement.

**1.3**    **Agreement.** "Agreement" means this Settlement Agreement and Release.

2

**1.4**   **Application for Final Approval.**  "Application for Final Approval" shall have the meaning set forth in Section 2.8 hereof.

**1.5**   **Authorized Claimant.**  "Authorized Claimant" means Named Plaintiffs, a Class Member, or the authorized legal representative of such a Class Member, who timely files a Claim Form (and does not file an Opt-Out Statement) in accordance with the terms of this Agreement, and who is therefore entitled to receive a Settlement Check (as hereinafter defined).

**1.6**   **Bar Date.**  "Bar Date" means the date by which any Class Member who wishes to qualify as an Authorized Claimant must file a Claim Form. Subject to the Court's approval and the provisions of Section 2.3, the Bar Date shall be no later than sixty (60) days after the initial mailing of the Notice, as defined herein, by the Settlement Claims Administrator (as defined herein).

**1.7**   **Claim Form.**  "Claim Form" means the form annexed to the Declaration of Jeffrey R. Maguire, Esq. (the "Maguire Decl.") as Exhibit "3" and which will be published with the Notice of Proposed Settlement of Class Action Lawsuit, attached to the Maguire Decl. as Exhibit "2") that Class Members must complete, sign, and return to the Settlement Claims Administrator by United States Postal Service First Class Mail ("USPS") postmarked on or before the Bar Date. The Claim Form must be received by the Settlement Claims Administrator for a Class Member to be eligible to receive a Settlement Check.

**1.8**   **Class and Class Member.**  "Class" (collectively) and/or "Class Member" (individually) means: all Defendants' non-managerial supermarket employees, who worked at any time during the period of January 1, 2017, to February 6, 2025.

**1.9**   **Class Counsel.**  "Class Counsel" or "Plaintiffs' Counsel" means Stevenson Marino LLP, 445 Hamilton Avenue, Suite 1500, White Plains, New York 10601.

**1.10**   **Class List.**  "Class List" means a list, in Microsoft Excel format, that includes the names, last known addresses, social security numbers, and weeks worked during the Settlement Period (as defined herein) for each Class Member. Class Counsel agrees not to use this information for any purpose other than to effectuate the terms of this Agreement. Class Counsel shall take all reasonable steps to maintain the confidentiality of the Class List including not divulging the information contained in the Class List to Named Plaintiffs or Class Members. Defendants shall use all reasonable efforts to produce a complete Class List. The full social security numbers of each Class Member shall be provided to the Settlement Claims Administrator upon request for purposes of skip tracing and correct identification of Class Members with similar names.

**1.11**   **Costs and Fees.**  "Costs and Fees" means Class Counsels' attorneys' fees, costs, and expenses.

**1.12**   **Court.**  "Court" means the United States District Court for the Southern District of New York.

**1.13**   **Days.**  "Days" means calendar days.

**1.14** **Defendants.** "Defendants" means Defendants Antillana & Metro Supermarket, Corp. ("Antillana"), Alra Corp. ("Alra"), 639 Grand St. Meat & Produce Corp. ("Ozzies's"), and Osvaldo Rodriguez, collectively.

**1.15** **Defendants' Counsel.** "Defendants' Counsel" means Milber Makris Plousadis & Seiden, 1000 Woodbury Road, Woodbury, New York 11797.

**1.16** **Fairness Hearing.** "Fairness Hearing" means the hearing before the Court relating to the Application for Final Approval of the Agreement.

**1.17** **Final Order.** "Final Order" means the Order entered by the Court after the completion of the Fairness Hearing, approving the terms and conditions of this Agreement, authorizing distribution of the Settlement Checks and Service Awards, approving distribution of Costs and Fees, and dismissing the Action with prejudice.

**1.18** **Final Effective Date.** Provided no appeal is timely filed, and no application has been made for reconsideration or rehearing, the "Final Effective Date" means thirty (30) days after the Court has entered the Final Order. If such an appeal or application for reconsideration or rehearing is timely filed, the latest of the following, if applicable, becomes the Final Effective Date: (1) any appeal from the Final Order has been finally dismissed; (2) the Final Order has been affirmed on appeal in a form substantially identical to the form of the Final Order entered by the Court; (3) the time to petition for review with respect to any appellate decision affirming the Final Order has expired and no such petition for review has been filed; and/or (4) if a petition for review of an appellate decision affirming the Final Order is filed, the petition has been denied or dismissed, or, if granted, has resulted in affirmance of the Final Order in a form entered by the Court.

**1.19** **Final Settlement Amount.** "Final Settlement Amount" means the sum of the aggregate Individual Gross Amounts (as defined below) to be paid to the Authorized Claimants, plus all Court-approved Costs and Fees, Service Awards, and Settlement Claims Administrator fees and costs. The Final Settlement Amount shall not include employer-side taxes, which are to be paid separately by the Defendants.

**1.20** **Individual Gross Amount.** "Individual Gross Amount" means the amount allocated to each individual Class Member prior to any withholdings for taxes and other lawful withholdings and deductions.

**1.21** **Individual Net Amount.** "Individual Net Amount" means the amount allocated to an Authorized Claimant after deductions for taxes and any other lawful withholdings and deductions as well as any sums that may be withheld pursuant to Section 2.3(E) of this Agreement.

**1.22** **Mediator.** Mediator shall mean Martin Scheinman, Esq.

**1.23** **Maximum Settlement Amount.** "Maximum Settlement Amount" means the sum of One Million Three Hundred Fifty Thousand Dollars and Zero Cents ($1,350,000.00).

4

**1.24**  **Named Plaintiffs.**  "Named Plaintiffs" means Fernando Santiago Huerta, Clementina Duran, and Melvin Recarey.

**1.25**  **Net Settlement Amount.** "Net Settlement Amount" means the net amount after deducting the attorneys' fees and costs, Service Awards, and claims administration costs from the Maximum Settlement Amount. The Net Settlement Amount shall not include employer-side taxes, which are to be paid separately by the Defendants.

**1.26**  **Notice or Notices.**  "Notice" or "Notices" means the Court-approved Notice of Proposed Settlement of Class Action Lawsuit as authorized in the Preliminary Approval Order, annexed to the Maguire Decl. as Exhibit "2".

**1.27**  **Opt-In Plaintiffs.**  "Opt-In Plaintiffs" means any individual who filed a consent to join form in this Action pursuant to § 216(b) of the Fair Labor Standards Act.

**1.28**  **Objector.**  "Objector" refers to an individual Class Member who properly and timely files an objection to this Agreement, and does not include any individual who opts-out of this Agreement.

**1.29**  **Opt-out Statement.**  "Opt-out Statement" means a written, signed statement that an individual Class Member or that individual's authorized representative uses to elect to exclude himself or herself ("Opt-out") from the settlement and from the Class. Any Class Member who does not timely (pursuant to Section 2.5 below) submit an Opt-out Statement waives and releases all State Law Claims, even if he or she does not submit a claim form. Class Members who submit an Opt-out Statement retain their FLSA Claims and/or State Law Claims.

**1.30**  **Preliminary Approval Motion.**  Preliminary Approval Motion shall have the meaning set forth in Section 2.2 hereof.

**1.31**  **Preliminary Approval Order.**  "Preliminary Approval Order" means the Order entered by the Court: (i) preliminarily approving the terms and conditions of this Agreement; (ii) directing the manner and timing of providing Notice to the Class Members; and (iii) setting the dates and deadlines for effectuating settlement, including the Bar Date, date of the publication of Notice, and the Fairness Hearing date. The Proposed Preliminary Approval Order is annexed to the Maguire Decl. as Exhibit "5."

**1.32**  **Qualified Settlement Fund.**  "Qualified Settlement Fund" (or "QSF") means the non-interest-bearing bank account controlled by an authorized Settlement Claims Administrator for the purpose of distributing the Final Settlement Amount in accordance with this Agreement. The QSF will be controlled by the Settlement Claims Administrator subject to the terms of this Agreement, the Preliminary Approval Order, and the Final Order, as well as any other or further Orders of the Court.

**1.33**  **Released Class Claims.**  "Released Class Claims" means any and all compensation or wage-related claims, misclassification claims, demands, rights, actions, causes of action, liabilities, damages, losses, obligations, judgments, duties, suits, costs, expenses, matters and issues arising in any way during the period from January 1, 2017 to the date that the

Court enters the Preliminary Approval Order, whether known or unknown, contingent or absolute, suspected or unsuspected, disclosed or undisclosed, liquidated or unliquidated, matured or unmatured, accrued or unaccrued, apparent or unapparent, including unknown claims, that could have been, or might be asserted in any court, tribunal or any other forum or proceeding, against Released Entities and that arise out of, relate to, or concern the payment of compensation or wages, including, but not limited to, any and all claims asserted in the Action, any and all statutory, constitutional, contractual or common law claims for unpaid regular or overtime wages, earned sick time, accrued benefit time, prevailing wages, improper notice, improper paystubs, spread of hours, unpaid gratuities, bonuses, service charges, living wage, tips, any related wage and hour claims, misclassification claims, interest on such claims, penalties, damages, liquidated damages, attorneys' fees, expenses, disbursements, litigation costs and fees, restitution, or equitable relief. This release includes any such claims under the New York State Labor Law and any other state or local law statute, rule, regulation, or ordinance governing compensation and/or the payment of wages and/or wage reporting and recordkeeping requirements, but not under the Fair Labor Standards Act.

**1.34**   **Released Authorized Claimant Claims.** "Released Authorized Claimant Claims" means any and all compensation or wage-related claims, misclassification claims, demands, rights, actions, causes of action, liabilities, damages, losses, obligations, judgments, duties, suits, costs, expenses, matters, and issues arising in any way during the period from January 1, 2017 to the date that the Court enters the Preliminary Approval Order, whether known or unknown, contingent or absolute, suspected or unsuspected, disclosed or undisclosed, liquidated or unliquidated, matured or unmatured, accrued or unaccrued, apparent or unapparent, including unknown claims, that could have been, or might be asserted in any court, tribunal any other forum or proceeding, against Released Entities and that arise out of, relate to, or concern the payment of compensation or wages, including, but not limited to, any and all claims asserted in the Action, any and all statutory, constitutional, contractual, or common law claims for unpaid regular or overtime wages, prevailing wages, improper notice, improper paystubs, spread of hours, earned sick time, accrued benefit time, unpaid gratuities, bonuses, service charges, living wage, tips, any related wage and hour claims, misclassification claims, interest on such claims, penalties, damages, liquidated damages, attorneys' fees, expenses, disbursements, litigation costs and fees, restitution, or equitable relief. This release also includes any such claims under the New York State Labor Law, the Fair Labor Standards Act as well as any other state or local law, statute, rule, regulation, or ordinance governing the payment of wages and/or wage reporting and recordkeeping requirements.

**1.35**   **Released Entities.** "Released Entities" means Defendants and their respective estates, heirs, executors, administrators, agents, successors, and assigns, as well as their individual and collective subsidiaries, parents, affiliates, partners (general and limited), members, lenders (including any administrative agent or collateral agent for such lenders), creditors, insurers, reinsurers, sureties, predecessors, and successors of the foregoing, as well as the officers, managers, owners, employee benefit plan administrators, shareholders, fiduciaries, trustees, directors, employees, agents, representatives, attorneys, trustees, executors, heirs, spouses, transferees, and assigns of any and all of them, in their individual and/or representative capacities, parent companies, subsidiaries, related or

affiliated companies, and any individual or entity which could be jointly liable with any of them, solely in their capacity as such.

**1.36    Reminder Postcard.** "Reminder Postcard" means the Court-approved Reminder Postcard as authorized in the Preliminary Approval Order, annexed to the Maguire Decl. as Exhibit "3."

**1.37    Service Award.** "Service Award" means the portion of the Maximum Settlement Amount, if any, requested by the Service Award Recipients and approved by the Court as a reasonable incentive award to the Service Award Recipients for representing the interests of the Class Members.

**1.38    Service Award Recipients.** "Service Award Recipients" means the following individuals: (a) the Named Plaintiffs; and (b) Opt-In Plaintiffs, Anderson Sanchez, Diana Ortega, Benjamin Rodriguez, Juan Santiago Huerta, Yony Lopez, Emelio Fragroso, Pedro Munoz Quezada, and Lucero Puebla.

**1.39    1.37    Service Award Recipient Released Claims.** "Service Award Recipient Released Claims" means the release of claims provided by the Service Award Recipients, and means any and all claims, demands, rights, actions, causes of action, liabilities, damages, losses, obligations, judgments, duties, suits, costs, expenses, matters, and issues arising in any way during their alleged employment with Defendants, whether known or unknown, contingent or absolute, suspected or unsuspected, disclosed or undisclosed, liquidated or unliquidated, matured or unmatured, accrued or unaccrued, apparent or unapparent, including unknown claims, that could have been, or might be asserted in any court, tribunal or any other forum or proceeding, against Released Entities, including, but not limited to, any and all claims asserted in the Action, any and all statutory, constitutional, tort, contractual or common law claims for unpaid regular or overtime wages, prevailing wages, improper notice, improper paystubs, spread of hours, unpaid gratuities, bonuses, service charges, living wage, tips, any related wage and hour claims, interest on such claims, penalties, damages, liquidated damages, attorneys' fees, expenses, disbursements, litigation costs and fees, restitution, or equitable relief. This release also includes any such claims under the New York State Labor Law, and the Fair Labor Standards Act. This release also includes any and all claims arising from the Service Award Recipients' alleged employment with Defendants.

**1.40    Settlement Administrator's Fee.** "Settlement Administrator's Fee" means the Settlement Claims Administrator's professional service fees and costs.

**1.41    Settlement Checks.** "Settlement Checks" means checks issued to Authorized Claimants for their Individual Net Amount, and for the award of Service Awards (less lawful deductions and withholdings pursuant to Section 3.5(D) of this Agreement) if said Authorized Claimant is also a Service Award Recipient.

**1.42    Settlement Period.** "Settlement Period" means January 1, 2017, through and including February 6, 2025.

**2.    PRELIMINARY APPROVAL AND PROCEDURE**

2.1    **Settlement Claims Administrator.**

    A.    **Retention.** The Parties hereby designate Martom to act as Settlement Claims Administrator. Within five (5) days after the filing of the Preliminary Approval Motion (as defined below), Class Counsel shall formally engage Martom to administer this settlement.

    B.    **The Settlement Administrator's Fee.** The Settlement Administrator's Fee, not to exceed Fourteen Thousand Six Hundred Dollars and Zero Cents ($14,600.00), shall be paid from the Maximum Settlement Amount.

    C.    **Funding Settlement Claims Administrator.** A portion of the Settlement Administrator's Fee, totaling Seven Thousand Five Hundred Dollars and Zero Cents ($7,500.00), shall be paid by Defendants to the Settlement Claims Administrator following the issuance of the Preliminary Approval Order, but no later than fourteen (14) days before the Notices are mailed to Class Members. The remaining portion of the Settlement Administrator's Fee shall be paid as part of the Final Settlement Amount in accordance with the provisions of Section 3.6 herein.

    D.    **Responsibilities of Settlement Claims Administrator.** The Settlement Claims Administrator shall be responsible for: (i) preparing, printing and disseminating to Class Members the Notice, Claim Forms, and Reminder Notices; (ii) performing a skip trace and resending, within three (3) days of receipt, any Notice and Claim Form returned without a forwarding address, or resending to those with a new forwarding address; (iii) responding to inquiries from the Parties; (iv) monitoring and maintaining a telephone number for the purpose of responding to inquiries made by Class Members until the Final Effective Date or the termination of this Agreement, whichever comes first; (v) promptly furnishing to counsel for the Parties copies of any requests for exclusion, objections or other written or electronic communications from Class Members that the Settlement Claims Administrator receives; (vi) receiving, retaining and reviewing the Claim Forms submitted by Class Members; (vii) keeping track of requests for exclusion or objection, including maintaining the original envelope in which the request or objection was mailed; (viii) responding to inquiries of Class Members regarding procedures for filing objections, Opt-out Statements, and Claim Forms; (ix) referring to Class Counsel all inquiries by Class Members or Authorized Claimants regarding matters not within the Settlement Claim Administrator's duties specified herein; (x) responding to inquiries of counsel for the Parties relating to the Settlement Claims Administrator's duties specified herein; (xi) promptly apprising counsel for the Parties of the activities of the Settlement Claims Administrator; (xii) maintaining adequate records of its activities, including the dates of the mailing of Notices, Reminder Notices, and mailing and receipt of Claim Forms, returned mail and any and all other actual or attempted written or electronic communications with Class Members; (xiii) confirming in writing to counsel for the Parties and the Court its completion of the administration of the claims process; (xiv) timely responding to communications from the Parties and their counsel; (xv)

8

calculating and paying each Authorized Claimant's taxes; (xvi) preparing and providing Defendants with the Authorized Claimants IRS W-9 and W-4 tax forms; (xvii) mailing all required tax forms to Class Members and Class Counsel as provided herein; (xviii) setting up a Settlement Account to be used for the distribution of: a) all Settlement Checks to Authorized Claimants; b) the Court-approved costs and fees to the Class Counsel; and c) the Court-approved fees of the Settlement Claims Administrator; (xix) calculating the amount of each Class Member's Individual Gross Amount; and (xxi) such other tasks as the Parties mutually agree or which the Court in the Action is pending directs.

E.    **Access to the Settlement Claims Administrator.**  The Parties will have equal access to the Settlement Claims Administrator. Class Counsel and Defendants' Counsel agree to use their best efforts to cooperate with the Settlement Claims Administrator and provide reasonable assistance in administering the terms of this Agreement.

2.2    **Settlement Class Certification and the Preliminary Approval Motion.**

A.    The Parties stipulate, for settlement purposes only, to the certification by the Court of the Class, as defined in Section 1.8 of this Agreement. Defendants' stipulation to certification of the Class for the limited purpose of this settlement and this Agreement shall in no way be considered any form or waiver of any form of alternative dispute resolution or for any other purpose. Also, Defendants' stipulation to certification of the Class shall not be construed as an admission or acknowledgement of any kind that any class should be certified or given class action treatment. Defendants reserve the right to challenge any application that the Named Plaintiffs may make in the future to obtain class certification in the event that this settlement is not approved and the Action continues to be litigated. The Class may be provisionally certified pursuant to Fed. R. Civ. P. 23 for the purposes of the monetary relief provided in this Agreement.

B.    Upon complete execution of this Agreement, Class Counsel shall file a Motion for Preliminary Settlement Approval (the "Preliminary Approval Motion"). In connection with the Preliminary Approval Motion, Class Counsel will submit to the Court: (1) the proposed Notice; (2) the proposed Claim Form; (3) the proposed Preliminary Approval Order; and (4) a fully-executed version of this Agreement and its Exhibits.

C.    In the Preliminary Approval Motion, Class Counsel shall inform the Court of the process to obtain a "Final Order" in accordance with the Court-approved schedule, so that at the completion of the Fairness Hearing, the Court may, among other things: (1) approve the settlement as fair, adequate and reasonable; (2) incorporate the terms of the releases, as set forth in Sections 1.36 and 1.37 hereof; (3) dismiss the Action with prejudice; (4) award Class Counsel's Costs and Fees; (5) award the Settlement Administrator's Fee; (6) award the Service Awards to the Service Award Recipients; and (7) authorize distribution and payment to the Authorized Claimants.

9

**D.**     Class Counsel will provide a "Microsoft Word" version of the Preliminary Approval Motion, including the Memorandum of Law and Declaration in Support, to Defendants' Counsel no later than seven (7) days in advance of any deadline to file the same for review and comment. Defendants' counsel shall provide any comments to the motion to Class Counsel no later than three (3) days in advance of any deadline for review and revision, and the parties shall confer and finalize the motion no later than one (1) day in advance of any deadline. Upon completion of such review and revision, Class Counsel shall file the motion, which Defendants agree not to oppose if filed in a manner consistent with the foregoing. Defendants reserve the right to oppose such motion, however, if it is inconsistent with the terms and conditions of this Agreement. In the event unintentional inconsistencies in the final Approval Motion are approved by the Court, the terms of this Agreement will be controlling.

**2.3**   **Notices, Reminder Notices, and Claim Forms to Class Members.**

A.     **Class Action Fairness Act Notice.** Within fourteen (14) days of the filing of the Preliminary Approval Motion, Martom shall issue any notice required by the Class Action Fairness Act, ("CAFA"), 28 U.S.C. § 1715(b).

B.     **Class List to Counsel.** Within fourteen (14) days of the entry of the Preliminary Approval Order by the Court, Defendants shall provide the Settlement Claims Administrator and Class Counsel with the Class List. Class Counsel agrees that they will not use this information for any other purpose other than to effectuate settlement.

C.     **Notice.** The Notice, to be provided in both English and Spanish, will inform Class Members about this settlement, including the language of the release and other information regarding the opportunity to object to, opt-out of, or participate in the settlement, and to appear at the Fairness Hearing. Within thirty (30) days of the entry of the Preliminary Approval Order by the Court, the Settlement Claims Administrator shall mail to all Class Members, via First Class United States Mail, the Court-approved Notices, IRS W-9 tax forms (or other tax forms as may be deemed necessary), and Claim Forms. Class Counsel and the Settlement Claims Administrator shall not publish and/or publicize the Notice in any manner other than specifically set forth herein. Nothing herein shall impede or prevent Class Counsel from responding to any inquiry from any Class Member or from furnishing any such Class Member(s) with any necessary forms upon their request for same.

D.     **Skip Trace and Re-mailing.** If a Claim Form is returned as undeliverable, the Settlement Claims Administrator shall take all reasonable steps to obtain a current address, including one skip-trace, and shall re-mail the Claim Form to any Class Member for whom it obtains a more recent address. The Settlement Claims Administrator shall also mail a Notice and Claim Form to any Class Member who requests them after the initial mailing of the Notice but before the Bar Date. The Settlement Claims Administrator will notify Class Counsel and Defendants'

Counsel of any Notices and Claim Forms returned as undeliverable after the first mailing, including those returned as undeliverable after any subsequent mailing. All costs of locating Class Members will be included in the Net Settlement Fund calculation.

E.    **Claim Forms.** To be deemed an Authorized Claimant, a Class Member must submit a completed Claim Form, which will be provided in both English and Spanish, and a completed IRS W-9 tax form (or other tax forms as may be deemed necessary) with a valid Social Security Number or Tax Identification Number. If any Class Member fails to include a valid Social Security Number or Tax Identification Number on their IRS W-9 tax form, the Class Member will not be barred from participating in the settlement. However, if the Class Member fails to provide valid Social Security Number or Tax Identification Number within two (2) weeks of the Bar Date the Settlement Claims Administrator shall withhold the amount of said Class Members' Individual Gross Amount, such withholding to be for one month from the date that the Class member is notified of the deficiency to provide proof that the Authorized Claimant has submitted an application for a valid Social Security Number or Tax Identification Number on their IRS W-9 tax form.

F.    **Reminder Postcard.** Thirty (30) days after the initial mailing of the Notice, the Claims Administrator shall mail via First Class United States mail, postage prepaid, a postcard reminder to each member of the Settlement Class who has not yet submitted a completed Claim Form or Opt-Out Statement. The reminder postcard will be a standard-sized (approximately 4 inches by 5 inches) white cardstock postcard and will contain black font with the font size being no greater than 12 point. The reminder postcard will identify the caption of the Lawsuit, will provide contact information for the Claims Administrator, and will state, "If you plan to submit a Claim Form, you must mail it so that it is postmarked or received by the Claims Administrator by [Claim Form Deadline]." The reminder postcard will be mailed via First Class United States mail to the most recent address the Claims Administrator has on file for the members of the Settlement Class. No additional reminder postcards will be re-sent.

G.    **Bar Date.** To be deemed an Authorized Claimant, a Class Member must postmark and mail a completed and signed Claim Form and the additional information submitted as required pursuant to Section 2.3(E) to the Settlement Claims Administrator by the Bar Date.

H.    **Class Member Compliance.** To be deemed an Authorized Claimant, a Class Member must fully comply with the requirements of Section 2.3(E) and Section 2.3(F) of this Agreement.

**2.4    Access to Class Member Information.**

A.    **Employment Information**. No later than fourteen (14) days after the entry date of the Preliminary Approval Order by the Court, the Defendants shall provide the Settlement Claims Administrator and Class Counsel with the Class List.

B.    **Calculated Individual Gross Amounts.** Within fourteen (14) days of its receipt of the Class List, the Settlement Claims Administrator shall provide Class Counsel with a spreadsheet, in Microsoft Excel Format, containing the anticipated Individual Gross Amounts for each Class Member, which shall be calculated in a manner consistent with Section 3.5(A) of this Agreement.

2.5    **Opt-out: Class Members who Opt-out.**

A.    Class Members who elect to opt-out of the settlement as set forth in this Agreement must mail, via First Class United States Mail, postage prepaid, a written, signed statement to the Settlement Claims Administrator that states he or she is opting out of the settlement (the "Opt-out Statement"). In order to be valid, the Opt-out Statement must include the name, address, and telephone number of the Class Member, and an express statement indicating his or her intention to opt-out, such as: "I opt-out of the Antillana wage and hour settlement." To be effective, an Opt-out Statement must be postmarked by United States Postal Service on or before the Bar Date.

B.    The latest date to opt-out of the settlement ("Opt-out Period") shall be on or before the Bar Date.

C.    The Settlement Claims Administrator shall stamp the received date on the original of each Opt-out Statement and send copies of each Opt-out Statement to Class Counsel and Defendants' Counsel not later than ten (10) days after receipt. The Settlement Claims Administrator will, within three (3) days of the end of the Opt-out Period, send a final list of all Opt-out Statements to Class Counsel and Defendants' Counsel by email. The Settlement Claims Administrator shall retain the stamped originals of all Opt-out Statements and originals of all envelopes accompanying Opt-out Statements in its files until such time as the Settlement Claims Administrator is relieved of its duties and responsibilities under this Agreement.

D.    Any Class Member who does not timely submit an Opt-out Statement pursuant to this Agreement will be deemed to have accepted the terms of this Agreement, will be bound by the Final Order, and will have all Released Class Claims released and dismissed with prejudice. Only those Class Members who timely complete and return a Claim Form postmarked or received by the Settlement Claims Administrator by the Bar Date, and otherwise comply with Section 2.3, will be deemed Authorized Claimants. Defendants shall have no obligation to pay or fund any amounts allocated to any Class Member who does not submit a timely Claim Form as set forth in this Agreement, and/or who does not otherwise comply with Section 2.3, unless otherwise ordered by the Court or agreed upon by the Parties.

2.6    **Objectors: Authorized Claimants Who Object to Settlement.**

A.    Class Members who wish to present objections to the proposed settlement at the Fairness Hearing must first do so in writing and file a valid Claim Form and satisfy

applicable requirements of Section 2.3 by the Bar Date. If a Class Member wishes to present objections to the proposed settlement, their Claim Form must be signed before a Notary Public. To be considered, such statement must be mailed to the Settlement Claims Administrator via First Class Mail, postage pre-paid, and postmarked by the United States Postal Service on or before the Bar Date. The statement must include all reasons for the objection, and any supporting documentation. The objecting Class Member shall include the following statement in the written objection: "This statement is truthful and accurate to the best of my knowledge." The statement must also include the name, address, and telephone number of the Class Member making the objection. The Settlement Claims Administrator will stamp the date received on the original of copies which are mailed, emailed, or faxed, and send copies of all objections, supporting documents, as well as a copy of the Notice and Claim Form mailed to the Objector, to Class Counsel and Defendants' Counsel by email delivery no later than three (3) days after receipt of the objection. The Settlement Claims Administrator shall also file the date-stamped originals of any and all objections with the Court.

B.    The Objector has the right to appear at any Fairness Hearing either in person or through counsel hired and paid for by the Objector. An Objector who wishes to appear at the Fairness Hearing must state his or her intention to do so in writing in his or her written objections. An Objector may withdraw his or her objections at any time. Any Class Member who has elected to opt-out of the settlement may not submit objections to the settlement. Such objections, if received by the Settlement Claims Administrator, will be disregarded.

**2.7    List & Calculations to Counsel.**

A.    No later than ten (10) days after the Bar Date, the Settlement Claims Administrator shall provide to Class Counsel and Defendants' Counsel: (a) a list of all Authorized Claimants; (b) a list of all Objectors; (c) the Individual Gross Amounts for each Authorized Claimant as well as their aggregate total; and (d) a list of all Class Members who timely submitted an Opt-out Statement. Throughout the period of claims administration, the Settlement Claims Administrator shall provide reports to the Parties, at reasonable intervals, and upon request, regarding: (i) the status of the mailing of the Notices and Claim Forms to Class Members; (ii) the status or progress of the claims administration process; and (iii) any other aspect of the claims administration process. Beginning the second Friday after Notice is mailed to Class Members, the Settlement Claims Administrator shall provide counsel for the Parties a weekly update on the number of Authorized Claimants, Objectors, and Opt-outs.

B.    No later than thirty (30) days prior to the Fairness Hearing, Class Counsel or the Settlement Claims Administrator shall provide notice to Defendants' Counsel of the Final Settlement Amount, together with a Microsoft Excel spreadsheet that designates each Authorized Claimant, his/her allocated share, and the appropriate totals and calculations to confirm the Final Settlement Amount.

**2.8    Fairness Hearing and Application for Final Approval and Dismissal.**

A.    After the Bar Date, in accordance with the schedule set by the Court in the Preliminary Approval Order, and in advance of the Fairness Hearing, Class Counsel shall file supporting documents for final approval by the Court of the settlement ("Application for Final Approval"). The Application for Final Approval may contain a report from the Settlement Claims Administrator, an application for attorneys' fees (consistent with Section 3.3 of this Agreement), and supporting affirmations and documents from Class Counsel regarding the fairness, adequacy, and reasonableness of the settlement or any aspect related to this Agreement. The Application for Final Approval may also include a proposed Final Order.

B.    Class Counsel will provide a "Microsoft Word" version of the Application for Final Approval, including the Memorandum of Law and Declaration in Support, to Defendants' Counsel one week in advance of any deadline to file the same for review and comment and upon completion of such review, Class Counsel shall file the application with Defendants' consent. Defendants reserve the right to oppose such application, however, if it is inconsistent with the terms and conditions of this Agreement.

C.    At the Fairness Hearing and through the Application for Final Approval, the Parties may request that the Court, among other things: (1) approve the settlement and Agreement as fair, reasonable, adequate, and binding on all Class Members who have not timely opted-out of the settlement and enjoin all Class Members who do not opt-out from pursuing and/or seeking to reopen claims that have been released by this Agreement; (2) order distribution of the Settlement Checks to the Authorized Claimants and any Service Awards to the Service Award Recipients as described in this Agreement; (3) order the costs and professional fees of Class Counsel to be paid, including the costs and fees incurred in the engagement of the Settlement Claims Administrator; (4) dismiss this Action with prejudice, and release the Released Class Claims, and Released Authorized Claimant Claims; (5) enter a Final Order in accordance with this Agreement; and (6) retain jurisdiction over the interpretation and implementation of this Agreement as well as any and all matters arising out of, or related to, the interpretation or implementation of this Agreement and of the settlement contemplated thereby.

**2.9    Termination of Agreement; Effect of Termination.**

Termination of the Agreement shall have the following effects:

A.    In the event this Agreement is terminated, the Parties will continue with the litigation as of the date of this Agreement with all rights and defenses intact as if no agreement had occurred.

B.    Defendants shall have no obligation to make any payments to any Party, Class Member, Authorized Claimant, or to Class Counsel other than would be required had this Agreement not been executed. However, the Party terminating this

14

Agreement shall be responsible for paying the litigation expenses of the Action including the Mediator fees that were incurred, and the costs, fees and expenses of the Settlement Claims Administrator incurred until the mailing of the termination notice is complete, unless such termination is initiated as a result of the Court's amendment and/or disapproval of any of the terms contained herein.

C.     The Parties shall advise the Court of the termination and shall apply to the Court to have a single approved notice mailed to Class Members advising them of the termination. If approved by the Court, then the Settlement Claims Administrator shall provide a Court-approved notice to Class Members and any Authorized Claimants that the Agreement did not receive Final Approval and that, as a result, no payments will be made to Class Members or Authorized Claimants under the Agreement. Such notice shall be mailed by the Settlement Claims Administrator via First Class United States Mail.

D.     If this settlement is terminated, Defendants retain all rights to: (1) contest the merits of the claims being asserted in the Action; (2) oppose any future motion for class certification; and/or (3) oppose contentions by the Named Plaintiffs and Class Members, and raise all other rights and/or defenses.

E.     If the settlement is terminated, any amounts held in escrow or deposited into the Qualified Settlement Fund pursuant to Paragraph 3.1(A) below will be returned to the Party who deposited said funds, less the litigation expenses as explained in Paragraph 2.9(B) and the accrued administration fees of the Claims Administrator if the Notices were already distributed by the Claims Administrator.

F.     If this settlement is not consummated for any reason, including: (1) a termination under this Agreement; (2) a ruling by the Court declining to enter a Preliminary Approval Order or Final Order substantially in the form submitted by the Parties (including a reversal and/or modification on appeal of the Court's Preliminary Approval Order or Final Order); or (3) for any other reason not presently contemplated, then the Parties shall first endeavor to resolve the matter jointly and in good faith, including jointly or individually seeking reconsideration of the Court's ruling, if necessary, or involving the Mediator, if practical. To the extent such good faith efforts fail, the Parties may continue to litigate the Action as if there was no Agreement.

G.     In the event of termination of the Agreement, the Parties agree that the statute of limitations for all FLSA and NYLL claims shall be tolled as of the date of the Mediation, and shall begin to run upon the date that the Agreement is terminated by Court order.

H.     By operation of entry of the Final Order, all Released Authorized Claimant Claims and Released Class Claims shall be deemed forever and fully released, discharged, and merged into this Agreement. In the event Plaintiffs initiate proceedings against Defendants to enforce this Agreement for Defendants' failure to make any pre-funding payment in accordance with Section 3.1(A)(1)

of this Agreement or for the non-payment of the Final Settlement Amount, minus any and all amounts previously paid, Defendants shall not raise timeliness or laches as a defense to oppose such enforcement.

## 3.0    SETTLEMENT TERMS AND DUE DILIGENCE REVIEW

### 3.1    Amount.

Subject to provisions of Section 2.9 above, the Parties agree to a Qualified Settlement Fund in an amount not to exceed One Million Three Hundred Fifty Thousand Dollars and Zero Cents ($1,350,000.00), which shall fully resolve and satisfy any and all amounts to be paid to all Authorized Claimants, in accordance with the terms of this Agreement, for releasing claims, and any Court-approved Costs and Fees, Service Awards, and Settlement Administration Costs and Fees.

A.    **Funding the QSF.** Defendants shall fund the QSF in the following payments:

    1.    Within thirty (30) days from the date that this agreement is fully executed, Defendants shall cause their insurance carrier to fund $200,000 into the QSF and, in addition, Defendants will personally fund $47,500 into the QSF.

    2.    Within thirty (30) days from the due date of the initial payment required by Section 3.1(A)(1) above, Defendants shall commence monthly payments of $47,500 for nine (9) additional months to the QSF, with each payment due within thirty (30) days of the preceding payment.

    3.    Within thirty (30) days from the Court issuing the Final Approval Order or thirty (30) days from the due date of the final payment required by Section 3.1(A)(2) above, whichever is later, Defendants shall fund the total remaining amount necessary to fund the Net Settlement Amount to the QSF, provided that if the remainder of the Net Settlement Fund due is greater than $47,500, Defendants shall continue to make monthly payments of $47,500 until the Net Settlement Fund is fully reached.

    4.    The monthly payments made as described in Paragraph 3.1(A)(2) will be made to the QSF in the same manner without any interruption to the extent necessary to fund the Final Settlement Amount.

B.    **Funding Default.** If Defendants fail to make any funding payment in accordance with Section 3.1(A) of this Agreement, Class Counsel shall provide Defendants' Counsel with notice of the default by email to Defendants' Counsel at jbyrnes@milbermakris.com. Defendants will then have seven (7) days from the date of receipt of such notice within which to cure the default by making the payment due and owing to the QSF. If Defendants timely cure their breach, no other dates in the above schedule shall become altered or in any way affected. If Defendants fail to timely cure their breach, one hundred percent (100%) of the

16

Net Settlement Amount will then become due and owing, and Named Plaintiffs may apply to the Court, which will retain jurisdiction over the Action to enforce the terms of this Agreement, to enter judgment against Defendants for that amount, plus reasonable attorneys' fees and costs associated with seeking judgment for Defendants' breach including costs and fees for any motion for costs and fees.

**3.2    Payments from the QSF.** The Settlement Claims Administrator shall make the following payments from the QSF, once the QSF is funded as described in Section 3.1(A):

A.    Within fourteen (14) days of the Final Effective Date as described in Section 1.19 the Settlement Claims Administrator shall: (i) mail all Settlement Checks to Authorized Claimants; (ii) mail any and all Service Awards to the Service Award Recipients; and (iii) wire-transfer payment to Class Counsel of all Court-approved Costs and Fees. Delivery of settlement checks shall be accomplished in the manner specified in Section 3.6.

B.    Following the receipt of four monthly deposits as provided in Section 3.1(A), the Settlement Claims Administrator shall issue payments on a pro rata basis to the extent that the QSF is funded in the same manner provided in Section 3.2(A). These payments will continue until the Final Settlement Amount is distributed.

C.    Any amounts representing uncashed Settlement Checks, uncashed Service Awards, or any other amount remaining in the QSF after one hundred (100) days from the mailing of all Settlement Checks shall constitute "Undelivered Funds." All Undelivered Funds shall be returned to Defendants within one hundred thirty (130) days from the mailing of all Settlement Checks.

**3.3    Amounts Payable as Attorneys' Fees, Expenses, and Costs.**

A.    At the Fairness Hearing, and in connection with the Application for Final Approval, Class Counsel will petition the Court for an award for Costs and Fees of no more than Four Hundred Fifty Thousand Dollars and Zero Cents ($450,000.00) in attorneys' fees and Eight Thousand Six Hundred Sixty-Nine Dollars and Zero Cents ($8,669.00) in litigation costs, subject to Paragraph 3.3(B). Defendants will not oppose this application, including any appeal or request for reconsideration, so long as the Final Order does not result in an award of Costs and Fees that is greater than Four Hundred Fifty Thousand Dollars and Zero Cents ($450,000.00) in attorneys' fees and Eight Thousand Six Hundred Sixty-Nine Dollars and Zero Cents ($8,669.00) in litigation costs.

B.    The substance of Class Counsel's application for Costs and Fees is to be considered separately from the Court's consideration of the fairness, reasonableness, adequacy, and good faith of the settlement of the Action. The decision terminating any proceeding related to Class Counsel's application for Costs and Fees shall not terminate this Agreement or otherwise affect the Court's ruling on the Application for Final Approval. In the event the Court approves Class Counsel's application for fees and costs in any amount less than the amounts that Class Counsel apply for, the amount of any reduction of Costs and Fees shall be distributed to the Authorized Claimants, on a pro rata basis if necessary, in accordance with the provisions of Section 3.6.

C.    Defendants shall fund the Court-approved Costs and Fees into the QSF in the manner described in Section 3.1(A).

**3.4    Service Awards.**

A.    In return for services rendered to Class Members, Authorized Claimants, and the Class, at the Fairness Hearing the Service Award Recipients may apply to the Court to receive Service Awards of no more than a cumulative total of Fifty Thousand Dollars and Zero Cents ($50,000.00), which shall be deducted from the Maximum Settlement Amount.

B.    The Service Awards, the aggregate total of which shall not exceed Fifty Thousand Dollars and Zero Cents ($50,000.00), shall be divided amongst the Service Award Recipients equally, but subject to the approval of the Court. Class Counsel shall explain the distribution of the Service Awards amongst the Service Award Recipients in the Application for Final Approval. In the event the Court approves Service Awards that total less than Fifty Thousand Dollars and Zero Cents ($50,000.00) in the aggregate, the difference between Fifty Thousand Dollars and Zero Cents ($50,000.00) and any lesser aggregate amount awarded to the Service Award Recipients shall be distributed to the Authorized Claimants in accordance with the provisions of Section 3.6.

C.    The application for the Service Awards is to be considered separately from the Court's consideration of the fairness, reasonableness, adequacy, and good faith of the settlement of the Action. The Court's decision on the application for the Service Awards will not terminate this Agreement or otherwise affect the Court's ruling on the Application for Final Approval.

D.    Defendants shall fund the Court-approved Service Awards in the manner described in Section 3.1(A).

**3.5    Net Settlement Fund, Allocation to Class Members, and Calculation.**

A.    **Calculation.**  Each Authorized Claimant's Individual Gross Amount shall be calculated based on the number of weeks worked by each Authorized Claimants as follows:

18

1. Calculate the Net Settlement Amount by deducting the Fees and Costs, Service Awards, and claims administration costs, from the Maximum Settlement Amount;

2. Each Class Member shall be assigned one (1) point for each week worked between January 1, 2017 and February 6, 2025, based upon Defendants' employment records provided to counsel prior to the mediation;

3. Add all points for each Class Member together to obtain the "Total Denominator;"

4. Divide the number of points for each member of the Settlement Class by the Total Denominator to obtain each Class Member's allocated percentage of the class fund amount ("Percentage");

5. Multiply each Class Member's Percentage against the Net Settlement Amount to determine the Individual Gross Amount of each Class Member;

Once each Class Members' Individual Gross Amount is calculated in accordance with the provisions of this Section 3.5, the Individual Gross Amount shall not be increased unless: (a) the Court approves Service Awards that total less than Ten Thousand Dollars and Zero Cents ($10,000.00); and/or (b) the Court approves Costs and Fees that total less than Four Hundred Fifty Thousand Dollars and Zero Cents ($450,000.00) in attorneys' fees and Eight Thousand Six Hundred Sixty-Nine Dollars and Zero Cents ($8,669.00) in litigation costs.

Defendants enter into this Agreement to calculate each Class Members' Individual Gross Amount in the manner set forth above for the purposes of settlement only. Nothing above or otherwise herein shall be construed as an admission that Defendants were required to pay any overtime wage compensation or any other amount of unpaid wages, at any period of time.

B. **Tax Treatment**. Fifty percent (50%) of each Authorized Claimant's Individual Gross Amount will be reported to the IRS as W2 wage income and Fifty percent (50%) of each Authorized Claimant's Individual Gross Amount will be reported to the IRS as 1099-Misc non-wage income representing liquidated damages and interest. By submitting a Claim Form, each Authorized Claimant agrees to defend and hold Defendants harmless, up to the amount of his or her Individual Gross Amount, for any unexpected tax obligations and related expenses that Defendants might incur because of this settlement and/or the failure of any Authorized Claimant to pay taxes on any income he or she might receive as a participant in the settlement.

## 3.6 Settlement Check Distribution.

A. The Settlement Claims Administrator shall be responsible for generating checks or wire transfers to pay the Individual Net Amounts to the Authorized Claimants,

19

Service Awards, the Settlement Administrator's Fee, and Costs and Fees. The Settlement Claims Administrator shall deliver all settlement checks to Authorized Claimants by First Class Mail and to Class Counsel by wire transfer.

B.     The Settlement Claims Administrator shall deliver all Individual Net Amounts to the Authorized Claimants by check via First Class Mail and Class Counsel's Costs and Fees via wire transfer.

## 3.7   Release of Claims and Covenant Not to Sue.

A     By operation of the entry of the Final Order, and except as to such rights or claims to enforce this Agreement, each individual Class Member who does not timely opt-out of this settlement pursuant to this Agreement, and each individual Authorized Claimant, on behalf of themselves, their heirs, executors, administrators, successors, assigns, estates, representatives, subsidiaries, affiliates, and agents forever and fully releases and discharges the Released Entities from all Released Class Claims as defined in paragraph 1.36.

B.     By operation of the entry of the Final Order, and except as to such rights or claims to enforce this Agreement, each individual Authorized Claimant on behalf of themselves, their heirs, executors, administrators, successors, assigns, estates, representatives, subsidiaries, affiliates, and agents forever and fully releases and discharges the Released Entities from all Released Class Claims and Released Authorized Claimant Claims as defined in paragraphs 1.36 and 1.37.

C.     Unless the Named Plaintiffs or Opt-in Plaintiffs opts-out of this settlement pursuant to the terms of this Agreement, then by operation of the entry of the Final Order, and except as to such rights or claims to enforce this Agreement, regardless of whether the Named Plaintiffs or Opt-in Plaintiffs timely submit a Claim Form, the Named Plaintiff and Opt-in Plaintiff forever and fully releases and discharges Released Entities from all Released Class Claims and Released Authorized Claimant Claims as defined in paragraphs 1.36, 1.37, and 1.38.

20

D. The Class Members and Authorized Claimants expressly acknowledge that: (i) the facts and perceived circumstances to which the Released Class Claims and Released Authorized Claimant Claims relate, may hereafter turn out to be other than, or different from the facts and perceived circumstances now known or believed to be known; (ii) the Class Members and Authorized Claimants expressly assume the risk referred to in "(i)" of this provision; and (iii) the Class Members and Authorized Claimants agree that the Released Class Claims, Released Authorized Claimant Claims, and Released Claims shall be in all respects effective in accordance with their terms and shall not be subject to termination or rescission by reason of such different facts or perceived circumstances.

**3.8** **Settlement Payments Do Not Trigger Additional Benefits or Incentives.** All payments to Authorized Claimants shall be deemed to be paid to such Authorized Claimants solely in the year in which such payments actually are received by the Class Members. The Parties agree that the payments provided for in this Agreement are the sole payments to be made to the Class Members in connection with this Settlement or the Action, and that the Authorized Claimants are not entitled to any new or additional compensation, benefits or incentives as a result of having received such payments, notwithstanding any contrary language or agreement in any benefit or compensation plan document that might currently be in effect or have been in effect during the period covered by this Settlement.

**3.9** **Non-Admission of Liability.** By entering this Agreement, Defendants in no way admit any violation of law or any liability whatsoever to the Named Plaintiffs, Opt-in Plaintiffs, Authorized Claimants, and/or the Class Members, individually or collectively, all such liability being expressly denied. Likewise, by entering into this Agreement, Defendants in no way admit to the suitability of this case for class action litigation other than for purposes of settlement. Rather, Defendants enter into this Agreement to avoid further protracted litigation, and to fully resolve and settle all disputes with the Named Plaintiffs, Opt-in Plaintiffs, Authorized Claimants, and Class Members. Settlement of the Action, negotiation, and execution of this Agreement, and all acts performed and documents executed pursuant to or in furtherance of this Agreement or the settlement: (1) are not, shall not be deemed to be, and may not be used as, an admission or evidence of any wrongdoing or liability on the part of Defendants or of the truth of any of the factual allegations in any and all complaints or other papers filed by Named Plaintiffs in the Action; and (2) are not, shall not be deemed to be, and may not be used as an admission or evidence of fault or omission on the part of Defendants in any civil, criminal, regulatory, governmental, administrative, or arbitral proceeding. The Parties understand and agree that this Agreement is a settlement document and shall be inadmissible in evidence in any proceeding, except an action or proceeding to approve, interpret, or enforce the terms of the Agreement.

**4.0** **MISCELLANEOUS PROVISIONS.**

**4.1**    **Cooperation between the Parties; Further Acts.** The    Parties    shall    reasonably cooperate with each other and shall use their reasonable best efforts to obtain the Court's approval of this Agreement and all of its terms. Each Party, upon the request of any other Party, agrees to perform such further acts, and to execute and deliver such other documents as are reasonably necessary to carry out the provisions of this Agreement.

**4.2**    **No Assignment.** Class Counsel and the Named Plaintiffs represent and warrant that they have not assigned or transferred or purported to assign or transfer to any person or entity, any claim or any portion thereof or interest therein, including, but not limited to, any interest in the Action or any related action.

**4.3**    **Entire Agreement.** This Agreement constitutes the entire agreement among the Parties with regard to the subject matter contained herein, and all prior and contemporaneous negotiations and understandings among the Parties shall be deemed merged into this Agreement.

**4.4**    **Binding Effect.** This Agreement shall be binding upon the Parties and, with respect to Named Plaintiffs, Opt-in Plaintiffs, and all Class Members, Authorized Claimants, their spouses, children, representatives, heirs, administrators, executors, beneficiaries, conservators, attorneys, and assigns. Notwithstanding the passage of any legislation, bill, regulation, or other change in the law that may materially affect the rights of the Named Plaintiffs, Opt-in Plaintiffs, the Authorized Claimants, and all Class Members, this Agreement is binding**.**

**4.5**    **Survival.** The provisions of Sections 2.9 shall survive termination of this Agreement.

**4.6**    **Arms' Length Transaction; Materiality of Terms.** The Parties have negotiated all the terms and conditions of this Agreement at arms' length, including through the assistance of private mediation. All terms and conditions of this Agreement in the exact form set forth in this Agreement are material to this Agreement and have been relied upon by the Parties in entering into this Agreement, unless otherwise expressly stated.

**4.7**    **Captions.** The captions or headings of the sections and paragraphs of this Agreement have been inserted for convenience of reference only and shall have no effect upon the construction or interpretation of any part of this Agreement.

**4.8**    **Governing Law.** This Agreement shall in all respects be interpreted, enforced and governed by and under the laws of the State of New York, without regard to choice-of-law principles, except to the extent that the law of the United States governs any matter set forth herein, in which case such federal law shall govern.

**4.9**    **Reference of Disputes to Mediator.** The Parties agree that, in the event of any dispute regarding the interpretation or validity of or otherwise arising out of the settlement or this Agreement, the Parties shall first attempt to resolve any such disputes through the Mediator, and all costs therefor shall be shared equally. The Parties acknowledge and agree that they shall attempt in good faith to resolve any such dispute before the Mediator. In the event that the Mediator determines that he is unable to resolve any such dispute, the

Parties agree that they shall be subject to the jurisdiction of the Court as set forth in the subsequent paragraph.

**4.10**  **Waivers, etc. to Be in Writing**.  No waiver, modification, or amendment of the terms of this Agreement, whether purportedly made before or after the Court's approval of this Agreement, shall be valid or binding unless in writing, signed by or on behalf of all Parties, and then only to the extent set forth in such written waiver, modification, or amendment, subject to any required Court approval. Any failure by any party to insist upon the strict performance by the other Party of any of the provisions of this Agreement shall not be deemed a waiver of future performance of the same provisions or of any of the other provisions of this Agreement, and such Party, notwithstanding such failure, shall have the right thereafter to insist upon the specific performance of any and all of the provisions of this Agreement.

**4.11**  **When Agreement Becomes Effective; Counterparts.**  This Agreement shall become effective upon its full execution.  The Parties may execute this Agreement in counterparts, and execution in counterparts shall have the same force and effect as if all Parties had signed the same instrument.

**4.12**  **Email Signatures.**  Any party may execute this Agreement by causing its counsel to sign on the designated signature block below and transmitting that signature page via email to counsel for the other Party. Any signature made and transmitted by email for the purpose of executing this Agreement shall be deemed an original signature for purposes of this Agreement and shall be binding upon the party whose counsel transmits the signature page by facsimile or email.

**4.13**  **Construction.**  The determination of the terms and conditions of this Agreement has been by mutual agreement of the Parties. Each Party participated jointly in the drafting of this Agreement, and therefore the terms and conditions of this Agreement are not intended to be, and shall not be, construed against any party by virtue of draftsmanship.

**4.14**  **Consultation and Authority.**  Class Counsel warrants and represents that they have consulted with the Named Plaintiffs and have full authority to enter into this Agreement on behalf of the Named Plaintiff and the Class.

**4.15**  **Blue Penciling.** If any provision of this Agreement is held by a court of competent jurisdiction to be void, voidable, unlawful or unenforceable, the remaining portions of this Agreement will remain in full force and effect.

**4.16**  **Binding Authority of Counsel.** Counsel hereby represent that they are fully authorized to bind the parties they represent to the terms and conditions hereof and that they have retainer agreements and/or authorizations to execute this Agreement on their behalf.

**4.17**  **Signatures.** This Agreement is valid and binding if signed by the Parties' authorized representatives.

**4.18**  **Notice.** All other notices and documents set forth herein shall be delivered to Defendants' Counsel at the address in Section 1.8 or via email to jbyrnes@milbermakris.com, and

Class    Counsel    at    the    address    in    Section    1.11    or    via    email    to
jmaguire@stevensonmarino.com, respectively.

**WE AGREE TO THESE TERMS,**

**Stevenson Marino LLP**
**For Plaintiffs**

By: _____
               **Jeffrey R. Maguire**

Dated: _____

**For Defendants**

By: _____
               **Osvaldo Rodriguez**

Dated: _____6/2/2025_____

24